LAND, J.
On April 24, 1918, petitioner was married to Miss Prances Wahlig, daughter of the defendants, Frederick Wahlig and Clara Hussey Wahlig. Petitioner made the acquaintance of his wife during the year 1916, and became engaged to marry her on or about February 15, 1918.
Prior to the marriage the parents had raised objections 'to petitioner’s continuing his visits to their home, and, because of the opposition, the plaintiff and his fiancée eloped, and were joined in wedlock by a justice of the peace in St. Bernard parish. On the same night this union was blessed in the presence of witnesses by a priest of the Catholic Church, of which the contracting parties are members.
Petitioner charges that shortly after his marriage, and while living at the home prepared by him for his bride on Euterpe street, in the city of New Orleans, the defendants forcibly abducted his wife, and have subsequently detained her in their home, against her will, have alienated her affections, and have denied to petitioner, her lawful husband, all rights of access to her.
Petitioner also alleges that, in order to poison the mind, of his wife against him, defendants have falsely and maliciously defamed him by charging that he was sickly and consumptive and unfit to contract a marriage with their daughter, as well as unable to earn a decent livelihood for himself and wife. Petitioner alleges that he has been *468 deprived of his wife, of her affection, and of her society by the defendants, through the exercise of them over her of such men-ta), moral, and physical influence as has suddenly changed her deep-seated love for him to apparent coldness and indifference.
For the loss of the aid, assistance, comfort and society of his wife, for the deprivation 'of her love and affection, and for the humiliation, chagrin, mortification, and pain alleged to have been undergone and suffered by petitioner, because of the alleged defamatory statements made by defendants as to his unfitness to contract marriage with their daughter, petitioner claims damages against defendants in solido in the sum of $25,000.
.The defendants answered separately, and denied in their respective answers the allegations contained in plaintiff’s' petition, and specially averred that their daughter has always been, and will continue to be, at liberty to do as she pleases in regard to living with her husband, and that all of the statements contained in plaintiff’s petition to the contrary are false and untrue. , .
Tlie defendant Frederick Wahlig specifically denied in his answer that he at any time, in any way or manner, did anything to separate his said daughter from her husband.
The case was submitted to a jury upon these issues, and a verdict was returned in favor of plaintiff in the sum of $1,800 as damages, and defendants have appealed.
The good character of the plaintiff is admitted by the defendants.
At the date of this suit he was 25 years of age, and was employed as a traveling salesman for Bernstein-Glenny Company, and was engaged in selling storage batteries. Formerly he had worked for the Eberling Company, handling Miller batteries, and for T. Fitzw'illiam & Co., and the Times-Picayune.
Plaintiff holds a fairly good position, and is making a good living. He was born and educated in the city of New Orleans, and moves in the same social circles as defendants and their daughter.
The record is barren of any testimony tending to show that plaintiff is consumptive, or otherwise physically unfit to enter into a marriage with the daughter of defendants.
Neither of defendants have assigned in his or her testimony in this case any reasonable grounds of opposition to plaintiff as a son-in-law. In fact, no objection to him is urged at all by defendants except his elopement with their daughter. The contracting parties were willing to contract, able to contract, and did contract a marriage, pursuant to the forms and solemnities prescribed by law.
The marriage of plaintiff to the daughter of the defendants in therefore a legal and valid marriage in every sense of that term. R. C. C. art. 90.
“The husband and wife owe to each other mutually fidelity, support and assistance.” R. C. C. art. 119.
“The wife is bound to live with her husband and to follow him wherever he chooses to reside; the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition.” R. C. O. art. 120.
It necessarily follows that the husband is legally entitled to the possession and society of his wife, and to her aid and assistance, as long as he complies with the obligations arising from the contract of marriage.
Any invasion of such marital rights, whether by the father or the mother of the wife, or by a third person,, without just or reasonable cause, necessarily constitutes an act resulting in damages to him, and imposes upon the trespasser, by whose fault it happened, the obligation of repairing the injury. R. O. O. art. 2315.
The plaintiff in this case was subjected to the great humiliation of seeing his bride forcibly abducted from his home within a few hours after the wedding ceremony. Instead of taking the law into his hands to avenge his own wrongs, he has appealed to the peace *470 ful process and to the calm and dispassionate decision of the courts.
Within a few days after this abduction petitioner applied to the civil district court for the parish of Orleans for a writ of habeascorpus, in order to obtain the release of his wife from the custody of the defendants.
In their return to this writ defendants answered that their daughter “is not and has not been detained in their home or deprived of her liberty to go when and where she pleases.”
The application for the writ of habeas corpus was filed April 29,1918, five days after petitioner’s marriage, and was dismissed on the return made.
On May 7, 1918, the present suit for damages against defendants was instituted, and answers similar to those made in the habeas corpus proceeding were filed.
On behalf of the defendants, their daughter, Mrs. David J. Hennessey, Jr., Gasper Wahlig, their son, and police officer Robert J. Laughlin, appeared as witnesses before the jury.
On behalf of the plaintiff, Timothy Lynch, Mrs. H. Lartigue, George Ziegler, and John H. Gihon appeared as witnesses on the direct examination, and Salvador Joseph Columbo, and Henry J. Lartigue in rebuttal.
Defendants and their three witnesses testified that the wife of plaintiff left his home on the night of April 24, 1918, and accompanied her mother and her brother Gasper to the home of her parents voluntarily and of her own free will; that there was no disturbance of any kind created by Mrs. Wahlig upon that occasion; and that no force or artifice whatever was employed to induce the wife of the plaintiff to leave him.
The testimony on behalf of plaintiff to the contrary is overwhelming. It establishes beyond question that the wife of petitioner was afraid of her mother, and did not dare to leave her husband’s home until her mother had feigned a fainting spell on the banquette. It was then that her brother appealed to her,, stating that her mother was dying, and she was urged to come at once to her assistance. Mrs. Hennessey yielded, and left the house to aid her mother, who immediately recovered, and the young bride was then hurried to an automobile and placed into it and driven rapidly away.
Nor is there any question in our minds that upon this occasion Mrs. Wahlig applied the epithet of “dirty consumptive dog,” if not a more abusive term, to petitioner, and berated him for marrying her daughter while in his physical condition.
A crowd had collected on the sidewalk in front of petitioner’s home, and two police officers had been summoned to prevent a disturbance of the peace. That there was excitement in the air and that the neighbors had assembled to witness a scene is fully attested by the assembling of the crowd and presence of the officers of the law.
The testimony of' defendants and of her daughter to the effect that she has been perfectly free to return to her husband since the night of her abduction, and to go where she may wish, has failed to impress us. It, is established by the most convincing evidence that, several months before the marriage of petitioner to the daughter of the defendants, Mrs. Wahlig had -forbidden him to visit her daughter at the house, and the pretext for this banishment is the mere fact that on one occasion she saw the young man whispering to her daughter, his fiancee.
Petitioner was forced, without any reasonable cause,, to cease hife visits to his sweetheart at her home, and to meet her clandestinely at the homes of their mutual friends. These meetings were always proper, and in the presence of others interested in the mutual happiness and welfare of this young couple.
As soon as defendants ascertained that petitioner was married to their daughter, Mrs. Wahlig appeared upon the scene with her son *472 and. other members of her family, and, after denouncing the petitioner as a victim of consumption and physically unfit to wed her daughter, compelled her to accompany her home, where she has remained for the last six years, separated from her husband, who has been denied admittance to that home and all communication with his wife.
When we consider the fact that petitioner was driven from the home of his fiancee before his marriage, that his wife on her wedding night was wrested from his arms and immured within the four walls of the home of her parents, where she has since been held incommunicado, we cannot accept the testimony of Mrs. Wahlig that she told her daughter the next morning to ring petitioner up on the phone and find out what he intended to do, nor can we consider favorably her testimony that petitioner should have come to them and told them of his intended marriage, so that he could have been married in the proper way. This would have been a futile proceeding upon the part of petitioner, as is shown also by the following statement made by Mr. Wahlig, the father of petitioner’s wife,' on Saturday night after the marriage in an interview with Timothy Lynch, a witness of plaintiff: “Well, under no consideration whatever will I allow my daughter to live with Dave Hennessey.” Mr. Wahlig admits that he sought this interview with Lynch, and does not deny that he made the above statement to him.
The day after petitioner’s marriage he went to the shop of Mr. Wahlig and endeavored to adjust matters, and was told by Mr. Wahlig that whatever his (Wahlig’s) wife did, he would stand by. Though Mr. Wahlig was not present on the occasion of the abduction, the testimony clearly shows that he was a party to the conspiracy to abduct the wife of petitioner, and that he has subsequently been a party to her illegal detention at the home of her parents. That he was not consulted about such a proceeding and was at home asleep is preposterous. He has stood by his wife in this matter, as he expressly declared his intention to do. As the head of the family, as its counsellor and protector, he has not only done nothing to heal the breach, but by his conduct has widened it.
The cross-examination of Mrs. Hennessey, the wife of petitioner, is pitiable indeed. After testifying to her perfect freedom from all restraints at home and her right to return to her husband at any time, if she so desired, she was confronted with certain letters, written to petitioner after the filing of this suit, in which she endeavored to arrange secret meetings with petitioner, in which she told petitioner to call himself “Emmett” when he rang her up over the phone to avoid the vigilance of her mother, in which she stated that she could not tell “when was the last time I have been on the front gallery.”
She admits writing secretly to her husband, and states in a postal card of date October 31, 1918: “I am going to send down there Saturday, so to. be sure to have a few lines for me.” These letters unquestionably show duress, restraint, and fear upon the part of Mrs. Hennessey, the wife of petitioner, and constitute unimpeachable proof of espionage and of the restrictions placed around her, as well as of the denial to petitioner of the usual avenues of communication with his wife.
That petitioner is not a consumptive and that he has a 'good position is admitted. His gooii reputation is not questioned. The jury saw and heard all of the witnesses testify, and accepted the testimony of plaintiff and of his witnesses as reflecting the true facts in the case. The verdict of the jury and the judgment rendered upon same are sustained by ample proof in our opinion, and meet with our approval. We do not feel inclined, however, to increase the amount of the judgment as prayed for by the appellee, as the property owned by defendants is enumerated in the *474 evidence, and it is presumed that the jurors were acquainted with its location and value. The defendant- does not appear to be a man of wealth, but rather of moderate circumstances.
The judgment appealed from is therefore affirmed, at the cost of appellants.